IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:03 CV 388

| | |
|---|---|
| JAMES DAVID CASE, as Personal Representative of the Estate of DAVID SCOTT CASE, <br><br> Plaintiff, <br><br> v. <br><br> M.C. STEWART and GASTON COUNTY, <br><br> Defendants. | MEMORANDUM AND ORDER |

**THIS MATTER IS BEFORE THE COURT** on the "Defendants' Motion for Summary Judgment" (Document No. 24) and "Memorandum in Support" (Document No. 25), filed June 12, 2006.

## I. PROCEDURAL BACKGROUND

On July 10, 2003, the now deceased Plaintiff filed this action in Gaston County Superior Court, alleging claims for relief under (1) 42 U.S.C. § 1983 for violations of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution; and (2) state common law claims for assault and battery, false imprisonment, and intentional infliction of emotional distress. The Defendant officer has been sued in his official and individual capacities, while the Defendant Gaston County has been sued on a theory of *respondeat superior*.

The Defendants timely removed the state action to this Court based on federal question jurisdiction. Removal appears to be proper and has not been challenged by the Plaintiff.

On June 12, 2006, the Defendants filed the instant "Motion for Summary Judgment"

(Document No. 24). Plaintiff has filed his brief in opposition (Document No. 28), along with the affidavit of Patricia Kutsch. Defendants filed a Reply Brief (Document No. 32). Counsel for the parties appeared before this Court and argued the pending motion on December 5, 2006, after which the undersigned considered the matter and orally ruled from the bench in favor of the Defendants, indicating the granting of summary judgment on all issues.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. §636(c), and this motion is now ripe for the Court's determination.

Following oral arguments from counsel for the parties on December 5, 2006, and having carefully considered the parties' respective arguments, the record, and the applicable authority, the undersigned will <u>grant</u> the Defendants' motion.

## II.  FACTUAL BACKGROUND

Defendant Mark Stewart was at all times relevant to this action an officer with the Gaston County Police Department. The Defendant Gaston County is a political subdivision of the State of North Carolina. The Plaintiff James David Case, personal representative of the Estate of David Scott Case, deceased, is the father of David Scott Case and is a citizen and resident of Gaston County, North Carolina.

On May 26, 2002, Officer Stewart was on duty at the time of the events involving Plaintiff's decedent. The Plaintiff's decedent ("Case") was arrested in Bessemer City, Gaston County, North Carolina, by Police Officer Stewart and charged with failure to disperse upon command of a law enforcement officer, in violation of North Carolina General Statute 14-288.5. On February 6, 2003, Case was adjudicated guilty of failure to disperse, a Class 2 misdemeanor, by jury verdict in Gaston County Superior Court.

It is undisputed that the underlying arrest occurred during a late-night near-riotous

disturbance. According to the affidavits of three police officers on the scene (Document No. 25, attachments #2, 3, and 4), around 2:00 a.m., 30 to 40 teenagers were outdoors, alcohol was being consumed, and the police were investigating an alleged assault with a deadly weapon. As a result of the circumstances, Officer Stewart gave a verbal command for the people to disperse from the scene or face arrest for failure to obey. Some people obeyed immediately; others milled around and fled when approached by Officer Stewart. Case did not disperse as ordered. Officer Stewart approached Case and gave a direct order to Case to disperse and further ordered Case to leave the area. Case did not comply. As a result, Officer Stewart again instructed Case to leave, and then Officer Stewart gave Case a shove away from the scene. Case stumbled and fell.

There is a dispute as to whether Stewart merely pushed Case, or whether Stewart also grabbed Case by the arm and twisted it, after being informed of his medical condition. Plaintiff has presented a single affidavit from Patricia Kutsch as the sole evidence in opposition to Defendants' Motion for Summary Judgment (Document No. 28, attachment #1). The affidavit is contradictory in several key factual respects to the prior sworn testimony the affiant herself presented in the jury trial on the underlying criminal charges against Case in Gaston County Superior Court.

At the request of the police officers, paramedics on the scene examined Case. The medical records presented to this Court (Document No. 25, exhibit 5 – filed under seal) reveal that nothing abnormal was discovered and Case refused to be transported by ambulance to the hospital for evaluation or treatment. Subsequent medical encounters appear remote in time as to the relationship of a later-developed infection to the shunt site on his arm and show that the leg complaints were minimal.

Defendants submitted an affidavit of police tactical expert Dave Cloutier, a General and Specialty Instructor certified by the North Carolina Criminal Justice Standards Commission and an FBI-certified Defensive Tactics Instructor, who has over 30 years experience in law enforcement (Document No. 25, attachment #1). Cloutier opined that: (1) The level of force and arrest tactics utilized by the defendant in this matter were reasonable, prudent and consistent with standard law enforcement training and practices based upon the existing circumstances; (2) any injury or discomfort which may have been caused during this encounter was minimal at most, and was obviously confined to the plaintiff's leg as indicated in plaintiff's own statement; and (3) the defendant officer in this matter was justified in his belief that he and other officers were responding to a tense and uncertain environment influenced by potentially volatile circumstances, which required quick and decisive action as a means to restore order and prevent further injury to the officers and the general public. Considering the seriousness of the circumstances, it is incumbent upon the general public to heed an order to disperse in a timely and efficient manner as a means to minimize or prevent injury or property damage. Failure to obey such a lawful order only exacerbates the likelihood that such injury or damage may occur.

Plaintiff did not identify an expert witness on the issue of liability.

### III. DISCUSSION OF CLAIMS

#### A. The Summary Judgment Standard

Pursuant to Fed.R.Civ.P. 56(c), summary judgment should be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." See Charbonnages de France v. Smith, 597 F.2d 406 (4th Cir. 1979). Once the movant has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine

4

issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. Id. at 249-50.

When considering summary judgment motions, courts must view the facts and the inferences therefrom in the light most favorable to the party opposing the motion. Id. at 255, Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990); Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Elec. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted).

Applying these principles, there are no genuine issues of material fact, and the undersigned will grant the Defendants' motion for summary judgment on each of Plaintiff's claims, as discussed in detail below.

**B. Section 1983 Claims and Qualified Immunity**

The Plaintiff alleges a Fourth Amendment claim under 42 U.S.C. §1983: that the defendant officer used excessive force in arresting plaintiff's decedent, causing injury. Defendants have claimed that they are entitled to qualified immunity on the claim.

As the Fourth Circuit has stated,

The basic rules of §1983 [qualified] immunity are well known. Underlying the doctrine is a desire to avoid overdeterrence of energetic law enforcement by subjecting governmental actors to a high risk of liability. The concerns behind the immunity defense are especially salient in the context of street-level police work, which frequently requires quick and decisive action in the face of volatile

5

and changing circumstances. *The law thus shields police officers from civil liability unless the officer reasonably should have known that his actions violated clearly established constitutional rights.*

Rowland v. Perry, 41 F.3d 167, 172 (4th Cir. 1994) (citations omitted) (emphasis added). *Accord* Anderson v. Creighton, 483 U.S. 635, 638 (1987); Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998), aff'd 526 U.S. 603 (1999); Maciarello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992) (qualified immunity protects law enforcement officers from "bad guesses in gray areas" and ensures that they are liable only "for transgressing bright lines").

### 1. Excessive Force

The Fourth Amendment governs Plaintiff's excessive force claim, and it is clearly established under that amendment that individuals have the right to be free of excessive force during the course of an otherwise justified arrest. See Graham v. Connor, 490 U.S. 386, 395-96 (1989).

As discussed above, government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. In cases of alleged excessive force, a defendant officer's defense of qualified immunity is evaluated under the "reasonableness" standard

6

articulated by the Supreme Court in Graham:

> [The district court] must consider what a reasonable officer on the scene would have done, taking into account such factors as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.... Thus, the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... The calculus of reasonableness must embody allowances for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.

490 U.S. at 396-97. Accord Milstead v. Kibler, 243 F.3d 157, 162 (4th Cir. 2001) (applying Graham standard to §1983 excessive force claim).

In applying the *Graham* reasonableness standard, the Fourth Circuit explained:

Police officers are protected by qualified immunity when performing their duties within the scope of their employment insofar as their conduct does not breach "clearly established statutory or constitutional rights of which a reasonable person would have known...." [Q]ualified immunity is an immunity from suit, and not merely a defense to liability.... The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... The calculus of reasonableness must embody allowances for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.

Sigman v. Town of Chapel Hill, 161 F.3d 782, 786-87 (4th Cir. 1998) (internal citations omitted). Accord Behrens v. Pelletier, 516 U.S. 299, 306 (1996); Siegert v. Gilley, 500 U.S. 226, 232 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); Elliot v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996) ("[t]he court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection"); and Pittman v Nelms, 87 F.3d 116, 119 (4th Cir. 1996) ("[o]ne of the purposes of immunity ... is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit").

Furthermore, the Fourth Circuit has held that minor discrepancies between the officers' versions of events and that of other witnesses do not create a triable issue of fact, explaining:

> In a rapidly evolving scenario ... a witness's account of the event will rarely, if ever, coincide perfectly with the officers' perceptions because the witness is typically viewing the event from a different angle than that of the officer. For that reason, minor discrepancies in testimony do not create a material issue of fact in an excessive force claim, particularly when, as here, the witness views the event from a worse vantage point than that of the officers.

Anderson v. Russell, 247 F.3d 125, 130 (4th Cir. 2001)..

The question is whether during the execution of a constitutionally valid arrest and confronted with a subject who did not comply with verbal commands to disperse, but rather argued, refused, and proceeded with his own plans despite the clear order to do otherwise, a reasonable police officer should have known that clearly established constitutional law prohibited him from grabbing the subject by the arm and also pushing him, causing him to fall to the ground. Accord Taft v. Vines, 83 F.3d 681, 684 (4th Cir. 1996) ("The issue presented by the excessive force claims is not whether the officers violated police procedures, or even whether they, in fact, violated the Fourth Amendment. Rather, the question is whether, confronted with the facts of this case, reasonable police officers should have known that clearly established constitutional law prohibited the methods used.")

The undersigned is aware of no authority in support of Plaintiff's contention that the conduct of Officer Stewart violated any "clearly established constitutional law". In light of the fast-moving, volatile, and often dangerous circumstances encountered in arresting subjects, especially in the midst of large, unruly and near-riotous crowds, late at night, the undersigned cannot conclude that the Defendant officer reasonably should have known that he was constitutionally required to delay gaining control of the Plaintiff's decedent and to continue to

8

argue with him as he attempted to thwart the attempts to clear the area.

Accordingly, because the Defendant officer is entitled to qualified immunity as to the Plaintiff's §1983 claim for excessive force, the undersigned will grant the Defendants' motion for summary judgment as to that claim.

### 2. Municipal Liability Under §1983

The Plaintiff's failure to establish a constitutional injury-that is, his failure to establish a genuine issue of material fact on his underlying §1983 claims-is fatal to his §1983 claim against Gaston County. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978); and Carter v. Morris, 164 F.3d 215, 217-19 (4th Cir. 1999). Moreover, assuming *arguendo* that Plaintiff "suffered a deprivation of [his] federal rights, it is by now well settled that a municipality is only liable under section 1983 if it causes such a deprivation through an official policy or custom." Carter, 164 F.3d at 218 citing Monell, 436 U.S. at 690-91. Accord City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989); Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999); and Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). The Plaintiff, however, has alleged liability only on the basis of *respondeat superior* and has not identified any county policy or custom that caused an alleged deprivation of his rights. See Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) (municipal liability under §1983 does not attach under *respondeat superior,* but rather only where the municipality was "actually responsible"); and Riddick v. School Bd. of City of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000).

Accordingly, the undersigned will grant the Defendants' motion for summary as to Plaintiff's §1983 claim against Gaston County as well.

### C. State Law Claims

The Plaintiff has also brought state common law claims for false imprisonment, assault and battery and intentional infliction of emotional distress.

In North Carolina, findings that a law enforcement officer's use of force in the course of arrest was "reasonable" for the purposes of finding qualified immunity to a §1983 excessive force claim are fatal to the Plaintiff's state law tort claims. Accord Sigman, 161 F.3d at 788-89 (granting summary judgment as to North Carolina wrongful death claim based on defendants' alleged "negligence"); Glenn-Robinson v. Acker, 140 N.C. App. 606, 624-25 (2000) (same as to assault and battery); Estate of Fennell ex rel. Fennell v. Stephenson, 137 N.C. App. 430, 439-40 (2000), reversed in part of other grounds, 354 N.C. 327 (2001) (finding of qualified immunity also precluded plaintiff's state law wrongful death claim based on defendant's alleged recklessness and gross negligence); and Fowler v. Valencourt, 108 N.C. App. 106, 114 (1992), rev'd in part on other grounds, 334 N.C. 345 (1993) (same as to assault and battery). Furthermore, in North Carolina, common law claims of false imprisonment do not survive the subsequent death of the complainant. See Estate of Fennell, 137 N.C. App at 437.

As to the intentional infliction of emotional distress claim, North Carolina common law requires a stringent showing. The elements of the intentional tort are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." Hogan v. Forsyth Country Club, 79 N.C. App. 483, 488, disc. rev. denied, 317 N.C. 334 (1986). "It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery." Id., at 490. There is no evidence to suggest the conduct complained of was extreme or outrageous, nor is there evidence that Plaintiff's decedent suffered severe distress.

If there is no underlying tort, no *respondeat superior* claim can lie against the employer,

Gaston County.

> An employer may be held liable for the torts of an employee under the doctrine of respondeat superior in circumstances where: (1) the employer expressly authorizes the employee's act; (2) the tort is committed by the employee in the scope of employment and in furtherance of the employer's business; or (3) the employer ratifies the employee's tortious conduct.

<u>Denning-Boyles v. WCES, Inc.</u>, N.C. App. 409, 414 (1996) (citation omitted).

Accordingly, the undersigned will <u>grant</u> the Defendants' motion for summary judgment as to the Plaintiff's state law claims.

### IV. ORDER

**IT IS, THEREFORE, ORDERED** that "Defendants' Motion for Summary Judgment" (Document No. 24) is **GRANTED**.

Signed: January 4, 2007

David C. Keesler
United States Magistrate Judge